## JOHN T. IRELAND v. RALPH BAGALEY.

ERROR TO THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY COUNTY.

Argued October 24, 1887—Decided January 3, 1888.

In an ejectment where both parties have filed abstracts of title to which they are held on the trial, the plaintiff tracing title from the commonwealth and defendant showing an independent title and claiming under adverse possession, it is competent for the defendant to prove by evidence of surveys that the lines of his inclosure and possession include the land in dispute, while the lines of the tract to which the plaintiff's written title and possession under it related, do not.

Before Gordon, C. J., Paxson, Sterrett, Green and Williams, JJ.; Trunkey and Clark, JJ., absent.

No. 255 October Term 1886, Sup. Ct.; court below, No. 69 January Term 1883, C. P.

The case below was an ejectment instituted November 2, 1882, by Ralph Bagaley against John T. Ireland to recover a parcel of ground fourteen feet wide and twenty feet deep, along the line of the Allegheny Valley Railroad, in Penn township, part of a larger tract of twelve acres, the title to about four acres of which was in dispute.

A rule of the court in which the action was to be tried provides:

In all actions of ejectment hereafter brought it shall be the duty of the plaintiff, either by himself, his agent or attorney, to file in the office of the prothonotary of this court on or before the first day of the term to which the writ is returnable, a statement containing a description of the land together with the number of acres and the proportion thereof which he claims, and an abstract of the title on which he relies for his recovery, whether the same be in writing or otherwise; and where the same is a matter of record, a reference thereto. And the defendant shall plead not guilty and enter his defence, if any he hath, for the whole or any part thereof before the next term; and at the time of entering his plea he shall by himself, his agent or attorney, file a statement containing an abstract of the title or facts on which he relies for his defence, whether the same be.in writing or otherwise; and where the same is matter of record a reference thereto together with a specification of so much of the plaintiff's title as he denies, and so much thereof as is not denied shall be deemed admitted; and at the trial the evidence shall be confined to the facts respectively denied by the parties.

Under this rule the plaintiff filed an abstract of title referring in each item to the place of record of the conveyance or will, showing title in the plaintiff from the commonwealth down:

1. Patent, 1787, to Thomas Martin.
2. Deed, 1794, Thomas Martin to Peter Bennett.
3. Deed, 1800, Peter Bennett to Thomas May.
4. Will, 1842, Thomas May.
5. Deed, 1854, Thomas May's Execrs. to Isabella May Stewart.
6. Deed, 1859, Isabella May Stewart et al. to Thomas Dickson, F. C. Negley, et al.

7. Deed, 1859, F. C. Negley to Thomas Dickson et al.

8. Deed, 1864, Thomas Dickson et al. to Samuel M. Kier, John Foster and James M. Kier.

9. Deed, 1871, James M. Kier to Samuel M. Kier.

10. Deed, 1871, Samuel M. Kier to Kier and Foster.

Thence by divers conveyances to plaintiff, concluding as follows :

With notice of mesne profits up to date.

Actual and adverse possession by parties named in above abstract of title of the ground in dispute for more than sixty years ; parties holding after and under each other in the order of their purchases as set forth in said abstract continuously for the above period.—

The abstract of title filed by the defendant was as follows :

1. George Sutton, by sheriff, to Edward Pedan. Deed dated January 30, 1825 ; recorded etc., for 300 acres embracing the land in dispute.

2. Edward Pedan et ux. to James Ireland. Deed dated November 14, 1835, recorded etc., for land embracing the parcel in dispute.

3. That James Ireland entered into possession Nov. 14, 1835, of the said land in dispute amongst others adjoining, and he held, occupied, used and enjoyed the same until the time of his death in 1874. That the defendant and seven others are the children and heirs at law of the said James Ireland, who died intestate, and they have been in undisputed possession of the said land with other lands since his death. That all the allegations made, as appear by the brief of the plaintiff inconsistent herewith, are expressly denied as false so far as the land in dispute is concerned.

The names of George Sutton and Edward Pedan did not appear in the plaintiff's abstract as having been at any time connected with the title shown thereby.

At the trial on April 9, 1885, the plaintiff put in evidence his abstract of title, following with evidence as to possession and occupancy of the lot in dispute.

The defendant offered in evidence his abstract of title and called R. L. McCully, a surveyor:

Defendant's counsel proposes to prove by the witness on the stand and others the lines of the tract of land belonging to

the plaintiff in this case; the lines of the Ireland tract as appear upon the ground, for the purpose of showing that the plaintiff has no title by possession or otherwise of the tract of land in dispute; this to be further followed by proof of possession on the part of James Ireland and his heirs, who claim under him, of the land to which the plaintiff claims title.

Objected to:

So much of this offer as tends to prove possession by the defendant is not objected to, but the remainder of the offer is objected to as incompetent and irrelevant under the pleadings.

By the court: By the abstract of title, under our rule of court, the defendant admits that the piece of land in dispute is embraced within the deeds set forth in the plaintiff's brief of title and that the plaintiff has a paper title to the same; therefore, any evidence disputing the fact that the piece of land is within the plaintiff's deed is not proper under our rule of court. The defendant's abstract of title sets forth his title as against the plaintiff by adverse possession and the evidence must be limited to that question. Thus far the objection is sustained to the defendant's offer.[1]

John T. Ireland, called for the defendant, testified that he was with Mr. McCully when he ran the lines of the May tract:

Defendant's counsel proposes to prove by the witness on the stand that he was present with the surveyors who surveyed the line of the May tract at different times in 1882, 1883 and 1884, or thereabouts, and proposes to prove by the witness just where the lines of the May tract are upon the ground in Penn township, and proposes to prove further that the plaintiff has no other title, and is not the rightful owner of any other land than that embraced within the lines of the May tract; this for the purpose of showing that his, the witness's father, and himself claiming under him, have had adverse, continued, hostile, notorious and peaceful possession of the tract of land between the May line as appears by monuments on the ground on the south, the Huey tract on the west, the Allegheny river on the north, and the Pedan, now Boyd tract, on the east. This to be followed by proof that Isabella May Stewart never had possession, of any kind, of the tract of land described in the deed dated June 24, 1859, and that the said tract of land described in deed of said Isabella May Stewart to Dickson,

Negley & Co., is not a part of the land conveyed by Peter Bennett and wife to Thomas May, nor of the tract conveyed by James Caruthers and Thomas Davidson, executors of Thomas May, deceased, to Isabella May Stewart, by deed dated June 2, 1854. This is to be further followed by proof that Isabella May Stewart or Dickson, Negley & Co., Dickson Stewart & Co., Kier, Foster & Kier, the New York & Cleveland Gas Coal Co., Robert Arthurs or Ralph Bagaley, never had possession or title to said tract of land, adverse to defendant; this for the purpose of negativing any title in said plaintiff save as may appear by record through deeds.

Objected to: On the ground that the defendant has admitted in his pleadings that the plaintiff has the title to the land in dispute, and therefore no evidence tending to show that the lines of the land in dispute are other than that which is specified in plaintiff's deed, as contained in the abstract of title, is relevant. It is also further objected that so much of the offer as tends to show that the plaintiff has not title to other lands than the land in dispute, is irrelevant. So much of the offer as proposes to show that the plaintiff had *not* possession of the property or that defendant *had* possession is not objected to, but the whole offer is objected to for the purpose stated, and that is to show that the plaintiff had no title to the property, which title has been admitted, and as incompetent and irrelevant.

By the court: Under our rule of court and the abstract of title filed, the defendant admits the record title of the plaintiff to the property in dispute; he does not controvert the chain of title set forth in plaintiff's brief and does not deny that this property is within the plaintiff's deed, but sets up, substantially, a title to the property by adverse possession for more than twenty-one years prior to the bringing of this suit. The question of the plaintiff's record title is not in issue in this case and all evidence as to lines of the property is irrelevant. The plaintiff has shown that on the little piece of property now in dispute the defendant has a house; that that house stands on the ground where the coal tipple stood, so that the identical locality cannot be called in question; it is identified so clearly that there cannot be any dispute as to what the piece of property is, and under the pleadings in the case the defendant is

limited to proving an adverse possession of that piece of property; therefore, the offer as made is not admitted, but any evidence that shows the actual possession of the property in dispute will be received.[2]

Defendant's counsel proposes to prove by the witness on the stand, and others to be hereafter called, the boundary lines of the tract of land belonging to the plaintiff. This to be followed by proof of the monuments on the ground showing just where the lines of the lands of the plaintiff are, with additional proof that the tract of land described in the præcipe in this suit is not embraced in the boundaries of the lands belonging to the plaintiff. To be further followed by proof that Isabella May Stewart never had possession of the land in dispute. That Dickson, Negley & Co. were in possession of the land in dispute by virtue of a lease from James Ireland, the ancestor of the defendant, who occupied said tract of land until 1864 or thereabouts, when they disposed of said tract of land inter alia to Kier, Foster & Kier, and afterwards the New York & Cleveland Gas Coal Co., who held possession of the same until 1867 or 1869, and the defendants have had continual, adverse, hostile, notorious and peaceable possession of said land in dispute, with other lands, from that to the present time.

Objected to: first, that the first part of the offer which proposes to show the boundaries of the plaintiff's land is irrelevant, for it is not the land in dispute, and there is nothing in the offer specifying what land is proposed to be covered. If, however, it is the land in dispute, it is clearly irrelevant, because the pleadings admit that the plaintiff's title covers the land in dispute. All that portion of the offer which proposes to show the lines of the May tract are objected to as irrelevant for the same reason. All that portion of the offer purporting to show that either the plaintiff or his ancestors in title took the property by lease from the defendant or his ancestors, is irrelevant because the defendant had admitted, by admitting plaintiff's chain of title, that the plaintiff claimed under the title set out in his abstract, and the whole offer is objected to as incompetent, irrelevant and incomprehensible, but we do not object to any portion of the offer tending to show adverse possession.

Objections sustained for the reasons given as to the last offer. The defendant may be allowed to show that the house is not on the property where the coal tipple was; or to show that they have had possession of the property where the coal tipple stood for twenty-one years or more before the bringing of this action. The defendant could have called in question the title of the plaintiff by his abstract, but, not having done so, is limited to the defence set up in the abstract of title.[3]

The case being closed the court, WHITE, J., charged the jury:

[This controversy is about a small piece of land, 14 feet wide and 20 feet deep, on the upper side of the Allegheny Valley Railroad, some distance out of the city. Courts have adopted rules of practice to facilitate the dispatch of business, and to limit and define the issue to be tried in cases brought before them. We have a rule on the subject of ejectment actions, and the object of the rule is to make certain and definite what issue is to be tried, thus saving a vast amount of useless testimony and waste of time. This rule provides that the party who brings the action to recover possession of land must define its location so that it can be clearly known. He must also file an abstract of the title, showing his chain of title, which abstract is notice to the other side.

That rule requires the defendant also to file an abstract of his title, and in that way notify the plaintiff exactly what is the issue to be tried; and it is after these abstracts are filed that the case goes to trial. And the rule of the court provides that no evidence shall be received at the trial except in reference to the matters directly in controversy, so that whatever is not specifically denied shall be deemed admitted. Now in this case the abstracts of title are admitted in evidence for the purpose of showing what admissions are made, and it is for the court to say what these admissions are. The abstract furnished by the defendant does not controvert any one of the deeds set forth in plaintiff's abstract. That is an admission of the chain of title under which the plaintiff claims. It does not controvert that the land in dispute is covered by the plaintiff's deed and within the chain of his title, and thus that fact is admitted. Hence I have in this case deemed it improper

to go into the controversy as to where the lines between these tracts are. The defendant referred in his abstract to two or three deeds, one made in 1835, and claims that he was in possession of the property from 1835 down. Now, if that was true he would have a good title; but I understand that that abstract is simply claiming by the adverse possession, and simply denying the possession of the plaintiff; not controverting the plaintiff's record title, nor that this property is in the plaintiff's deed and covered by the deed that he received. I have so ruled, and I have said that the only question for the jury to pass upon is, Has the defendant been in adverse possession of this property for twenty-one years before this suit was brought? . . . The defendant, I believe, has admitted in this case that this piece of property is in the plaintiff's deed, and that the plaintiff would have a good title, except that he (the defendant) has held possession of it for twenty-one years and more under the chain of title that he claims.

Now, what is the evidence on that point as to the possession of this property? Mr. Dickson testifies that in 1858 he, and those with whom he was co-operating, purchased two acres in extent there; that this land in dispute was a part of the two acres; that they were operating coal works and that they built a coal tipple on this property. They got their deed for it in 1859 and operated the coal works until about 1864, if I remember correctly, when they sold out to Kier, Foster & Kier, and that that firm continued to use it as a coal tipple for three or four years after that, until the coal was exhausted. Then Mr. Arthurs testifies that about 1872 he became interested in the adjoining property, and afterwards, I believe, became interested in this; but in 1872, when he first became acquainted with it, this identical lot had on it the remains of the old coal tipple, and he says that he and Mr. Bagaley, I believe, used or occupied this property for some time, or at least that he saw it frequently until about 1882, when he became the purchaser, and that down to 1880 it was vacant, except as occupied by the coal tipple and perhaps fenced in, or part of it fenced in, there being a large rock there which I think he said they had to build their fence around. That in 1882 he saw this house on the property. The rock had been excavated and the house put where part of the rock stood. The defendant admits that he built the house in 1880.

Now, what evidence is there that the defendant, or any person under whom he claims, had this property in possession at any time prior to 1880 ? The deeds they refer to may embrace it. That may be true. But the defendant admits that the lines of plaintiff's deed embraced it, as I think from the abstract of title. But under the evidence we have here, if uncontroverted, the title in the plaintiff, it strikes me, would be good, even from the statute of limitations.

If the jury believe that Dickson went into possession in 1858 under a purchase in that year, built a coal tipple upon it, got a deed in fee simple for it in 1859, and that they and those under them used it down to 1880, that would be twenty-one years adverse possession.

But it is not on that ground that the case is to be determined by the jury. It is whether the defendant has had possession of this property for twenty-one years continuously before the bringing of this action, and I do not remember any evidence of his possession of this little strip prior to 1880, and there is the positive evidence of Mr. Dickson that it was occupied by the coal tipple as far back as 1858 and on down until the Kiers ceased to operate, probably 1867 or 1868, and that the remains of the tipple were there until 1880, when the defendant put his house upon it.

If you believe this testimony of Mr. Dickson and Mr. Arthurs, your verdict should be for the plaintiff.][4]

The jury found for the plaintiff and judgment being entered the defendant took this writ assigning as error:

1–3 The rejection of the defendant's offers. [1 to 3]

4. The entire charge of the court.[4]

*Mr. James Fitzsimmons* (with him *Mr. John S. Robb*), for the plaintiff in error:

1. The defendant's abstract of title raised an issue of fact as to the locus of the tract in dispute. The plaintiff relied upon his record title as shown by his abstract. To entitle him to recover he must show not only a title by deed but also an adverse possession for twenty-one years. A deed or will cannot be given in evidence unless some paper title is first shown in the grantor or testator, or in the absence of this, an actual possession of the land: Murphy v. Lloyd, 3 Wh. 538 ; McDonald

v. Adams, 7 W. & S. 371; Sailor v. Hertzogg, 10 Pa. 296; Schrack v. Zubler, 34 Pa. 38; Lykens v. Whelan, 15 Pa. 483; Peters v. Condon, 2 S. & R. 84; Hoak v. Long, 10 S. & R. 1; Kennedy v. Skeer, 3 W. 97; Zeigler v. Hautz, 8 W. 380.

2. The deed from Edward Pedan to James Ireland, referred to in the defendant's abstract of title, calls for the May line. The defendant offered to show where the lines of the Ireland tract and of the May tract were, for the purpose of proving that the parcel in dispute was within the Ireland tract claimed by the defendant and not within the May. tract held by the plaintiff. The rejection of this evidence was error. It is a well settled rule in ejectment cases that any and all testimony tending to show the actual lines on the ground of tracts in dispute, whether the title is claimed under conveyance or by adverse possession, is always competent for either party.

*Mr. Phil. H. Knox* (with him *Mr. James H. Reed*), for the defendant in error:

Defendant's abstract contained a reference to two deeds, one from Sutton through the sheriff in 1825, and one from Pedan to Ireland in 1835. Who Sutton was or is, or through or under whom he claimed, or how he got title if he had any, does not appear; nor does it appear that either Sutton or Pedan were ever seized or at any time in possession. These deeds even if they include in their lines the land in dispute, would not confer the right of possession upon Ireland. The case is left under both abstracts to be fought out where the court put it, on the ground of possession. The averment of a deed from one not shown to claim under the commonwealth or from a common source, amounts to nothing as against an admitted title from the commonwealth: Lehman v. Howley, 95 Pa. 295.

OPINION, MR. JUSTICE WILLIAMS:

The several assignments of error in this case raise but a single question. The action was brought to recover a small piece of land on the line of the Allegheny Valley Railroad. The plaintiff filed his abstract of title showing a regular chain of conveyances from the commonwealth down to himself, and called upon the defendant under a rule of court to

file an abstract of the title under which he claimed. In conformity with the rule the defendant filed an abstract in which he alleged title in one Edward Pedan as early as 1825, a conveyance by him to James Ireland in 1835, and possession by Ireland and his heirs (of whom defendant was one) from 1835 to the bringing of this suit.

On the trial the defendant made several offers, the purpose of which was to fix definitely the lines of the tract to which plaintiff's written title related and of which he had been in actual possession; and also to locate the lines of the land which he, the defendant, claimed under his written title; and of which he alleged he and his ancestor had been in actual adverse possession for fifty years. The court refused these offers under a construction of the rule of court under which the abstract of defendant had been filed. The court said: "By the abstract of title under our rule of court the defendant admits that the piece of land in dispute is embraced within the deeds set forth in the plaintiff's brief of title, and that the plaintiff has a paper title to the same. Therefore, any evidence disputing the fact that the piece of land is within the plaintiff's abstract is not proper under our rule of court. The defendant's abstract of title sets forth his title as against the plaintiff by adverse possession, and the evidence must be limited to that question."

But the defendant had to show the lines to which his possession extended. Without definite boundaries, his possession was rambling, uncertain and of no avail as a defence to the plaintiff's action. If, as the court held, "the evidence must be limited to the question of adverse possession," it was nevertheless absolutely necessary to show within whose inclosure the premises in dispute were. The defendant offered to show that whatever the plaintiff's paper title might cover, the lines on the ground by which his possession was bounded did not include this land. The evidence was not offered to show the general location of the lands covered by plaintiff's deeds, but to limit his actual possession. For this purpose it was both competent and important evidence. The admission of the defendant under his abstract and the rule of court did not cover the possession of the small piece of land in controversy, for he set out distinctly his title by virtue of the statute of limita-

tions. The court below so held, yet refused the offer to show that the lines of the defendant's inclosure actually embraced the land in controversy, while those of the plaintiff did not. This offer should have been admitted. If the proof proposed had been made and it had appeared that the lines of the plaintiff's inclosure did not include the land in controversy, but that the actual inclosure of the defendant did include it, and that the defendant had been in the actual, visible, hostile possession up to the lines of his inclosure for more than twenty-one years before suit brought, it will not be doubted that his defence was sufficient to defeat the plaintiff's paper title. This is in substance what the defendant proposed to prove but which was excluded.

As the case stood it was narrowed by the abstracts and the rule of court to the single question of title by possession. The exact limits of the possession of the parties, so far as those limits affected the land in controversy, were important. If the lines to which the plaintiff claimed did not include this land, so as to give him the actual, exclusive, hostile possession of it, and the lines of the defendant's possession did include it, the defendant had a right to make the proof, and his offer to do so should have been admitted. The other assignments of error are not sustained.

> Judgment reversed and venire facias de novo awarded.